UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Y.H., *et al.*,

                           Plaintiffs,

                -v-

MELISSA AVILES-RAMOS, *et al.*,

                          Defendants.

25-CV-4217 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

Y.H., Y.P., and H.C. (collectively, "Plaintiffs") bring this action against Melissa Aviles-Ramos, the New York City Department of Education, and the City of New York (collectively, "Defendants"). Before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17.) For the reasons that follow, the motion is granted.

**I.     Background**

The following facts are drawn from Plaintiffs' Complaint (ECF No. 5 ("Compl.")) and are assumed true for the purposes of this motion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). Plaintiffs are three students who were suspended from New York City Public Schools. (Compl. ¶ 2.)

Y.H. is a thirteen-year-old student. (*Id.* ¶ 72.) During the 2024-2025 school year, I.S. 96 Bay Academy charged student Y.H. with "using force against or inflicting or attempting to inflict serious injury against school personnel." (*Id.* ¶¶ 88, 89.) Although Y.H. and his representative maintained that any physical contact with school personnel was accidental, the hearing officer at Y.H.'s suspension hearing sustained the charge and imposed a sixteen-day suspension. (*Id.* ¶¶ 93, 95, 96.) Y.H. did not appeal the hearing officer's determination.

Y.P. is a fourteen-year-old student with a learning disability. (*Id*. ¶ 101-02.) During the 2023-2024 school year, I.S. 96 Seth Low Intermediate School charged student Y.P. with possession of a controlled substance. (*Id*. ¶¶ 102, 110-14.) The hearing officer sustained the charge and imposed a ten-day suspension. (*Id*. ¶¶ 121, 124, 125.) Y.P. did not appeal the hearing officer's determination.

H.C. is a twelve-year-old student with a learning disability and an emotional disability. (*Id*. ¶ 130, 131.) During the 2024-2025 school year, Pugsley Preparatory Academy charged student H.C. with acts that constituted a "danger to the health, safety, welfare, and morals" of herself and others at the school. (*Id*. ¶¶ 145, 146.) The hearing officer sustained the charge and imposed a seventeen-day suspension. (*Id*. ¶¶ 156, 157.) H.C. did not appeal the hearing officer's determination.

Y.H., Y.P., and H.C. now bring this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and to recover damages. (*See generally id*.) Plaintiffs allege that at their disciplinary hearings, Defendants were required only to show that there was "substantial and competent evidence" to sustain the charge and to impose a suspension. (*Id*. at ¶ 2.) According to Plaintiffs, the application of the "substantial and competent evidence" standard deprives them of their constitutional right to education without due process of law, in violation of the Fourteenth Amendment. (*Id*. ¶ 3.)

**II.     Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead facts sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this pleading standard, a complaint must "nudg[e]" the claims "across the line from conceivable to plausible." *Id*. at 570. Pleadings must contain "something more . . . than . . . a statement of facts that merely creates

2

suspicion [of] a legally cognizable right of action." 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1216 (4th ed. 2025). On a motion to dismiss, a court must accept all allegations in the complaint as true. *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir. 1978).

**III.     Discussion**

At school disciplinary hearings in New York, a "substantial and competent evidence" standard is applied. (Compl. ¶ 3.) The New York City Department of Education Chancellor's Regulation A-443 (hereinafter "Disciplinary Procedures") does not explicitly state an evidentiary standard. *See* Disciplinary Procedures § III.B. However, the "substantial and competent evidence" standard derives from § 306(1) of the New York State Administrative Procedure Act, which mandates that no decision by a state administrative agency shall be made "except upon consideration of the record as a whole . . . as supported by and in accordance with *substantial evidence*." N.Y. S.A.P.A. § 306(1) (McKinney 2025) (emphasis added). This language has been interpreted by the New York Supreme Court's Appellate Division to mean that hearing officers presiding over school suspension hearings must apply a "competent and substantial" evidence standard. *Bd. of Educ. v. Mills*, 293 A.D.2d 37, 40 (3d Dep't 2002). The Second Circuit has defined the substantial evidence standard as "more than a scintilla, but less than a preponderance" of evidence. *Metro-N. Commuter R.R. Co. v. U.S. Dep't of Labor*, 886 F.3d 97, 106 (2d Cir. 2018) (citing *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999)). Plaintiffs contend that this burden of proof fails to comport with the procedural due process required by the Fourteenth Amendment to the Constitution. (Compl. ¶ 165.)

In their motion to dismiss, Defendants argue that Plaintiffs' procedural due process claim must be dismissed for two reasons. (*See generally* ECF No. 18 ("Mem.").) First, Defendants posit that Plaintiffs' failure to appeal their suspension determinations bars them from asserting a

procedural due process claim under § 1983, as they are obligated to exhaust state administrative remedies before filing a federal lawsuit. (Mem. at 1-2.) Second, Defendants contend that Plaintiffs' challenge to the constitutionality of the "substantial and competent evidence" standard has already been rejected by courts and should be rejected by this Court. (*Id.*)

### A. Exhaustion

Defendants argue that Plaintiffs should be precluded from bringing their § 1983 claims because they have not exhausted the suspension appeals process. (Mem. at 1.) The appeals process outlined in Regulation A-443 of the New York City Chancellor of Education does not specify the standard of proof for appeals. *See* Disciplinary Procedures § IV.B.4. There is no reason to think the substantial evidence standard—the only aspect of the suspension process challenged by Plaintiffs in this case—would not still apply on appeal. Therefore, exhausting the appeals process is likely futile. *See Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) ("We do not require plaintiffs to exhaust their administrative remedies where they 'make a clear and positive showing that pursuing available administrative remedies would be futile.'") (quoting *Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993)).

Although Defendants' exhaustion argument likely fails on futility grounds, the Court need not reach it. As discussed below, the Court concludes that the "substantial evidence" standard comports with substantive due process in this case.

### B. Due Process

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alteration omitted). Here, the parties do not dispute that Defendants deprived Plaintiffs of a liberty interest in their education.

4

The only point in dispute is whether Defendants' deprivation of that liberty interest violated their due process rights as a result of the "substantial and competent evidence" standard.

### 1. *Mathews v. Eldridge* Balancing Test

In *Mathews v. Eldridge*, the Supreme Court provided a balancing test for determining whether an individual's procedural due process rights have been violated. *See generally Mathews v. Eldridge*, 424 U.S. 319 (1976). The test includes three key factors: (1) the private interest affected by the administrative action, (2) the risk of erroneous deprivation resulting from the administrative action, and (3) the government's interest in limiting procedural burdens and administrative costs. *Id.* at 335.

Prior to *Mathews*, the Supreme Court decided its foundational case on the due process rights and procedures required in the school disciplinary context, *Goss v. Lopez*. 419 U.S. 565 (1975). In *Goss*, the Supreme Court determined that public high school students facing a suspension have interests qualifying for protection under the Due Process Clause and therefore must be given notice and some sort of hearing. *Id.* at 581. *Goss* did not construe the Due Process Clause as requiring an opportunity to secure counsel, confront witnesses, or call one's own witnesses at a school suspension hearing. *Id.* at 583. Rather, the Court explained that for suspensions of less than ten days, a student need only be provided "rudimentary" procedures, such as "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 584. The Court left open the question of whether longer suspensions might require "more formal procedures." *Id.* at 584.

It is well established that students have both property and liberty interests in attending state-established and -maintained school systems. *See Goss*, 419 U.S. at 573-76. The Second

Circuit has recently noted the "well-settled" rule that students do not "shed their constitutional rights . . . at the schoolhouse gate," but added that those rights are "applied in light of the special characteristics of the school environment." *Leroy v. Livingston Manor Cent. Sch. Dist.*, No. 24-1241, — F.4th —, 2025 WL 3029421, at * 4 (2d Cir. Oct. 30, 2025) (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).  The suspensions at issue here—which ranged from ten to seventeen days—are modestly longer than the ten-day period at issue in *Goss*. (Compl. ¶¶ 96, 124, 156.)  Additionally, during the suspension the student "may not be penalized academically" and must be provided with a method of alternative instruction.  Disciplinary Procedures § III.B.1(a).  Taken together, these facts indicate that the private interest affected is significant but still relatively modest:  the students receive some form of education during the few days during which they are suspended.  If the suspensions were for the remainder of a semester or school year the interest would be substantially greater.

Turning to the second *Mathews* factor—the risk of erroneous deprivation—Plaintiffs argue that the "substantial and competent evidence" standard carries a substantial risk of error because it allows school officials to impose discipline without finding that a student's wrongdoing was more likely than not.  Based on the allegations in the Complaint, the Court must assume that there is some risk of erroneous deprivation of students' liberty interests in the context of school discipline.  And it is a reasonable inference that imposing a higher "preponderance of the evidence" standard, other things being equal, would decrease the risk of such erroneous deprivation to some extent.

However, the risk of erroneous deprivation also must be considered in the context of the robust administrative process governing public school suspensions in New York.  As described in the Complaint, when a student engages in impermissible conduct the principal must take

specified investigative steps, like questioning the victim, witnesses, and the accused student, and "provid[ing] the accused student with an explanation of the evidence and an opportunity to present his/her side of the event." Disciplinary Procedures § III.B.2(e). If the principal concludes that a suspension is warranted, he or she notifies the superintendent. *Id.* at § III.B.3(e). In turn, the superintendent can authorize the suspension if he or she believes the school has appropriately investigated. *Id.* at § III.B.3(h).

From there, the school must give immediate written notice to the student's parent, including providing specific information about the nature of the suspension, the upcoming suspension hearing, and the students' rights. *Id.* at § III.B.3(n). At the hearing, school officials and the student are afforded the opportunity to present evidence and cross-examine witnesses to a neutral hearing officer. *Id.* at § III.B.3(s)(5). That evidence must be based on more than just hearsay. *Id.* at § III.B.3(s)(10). The hearing officer then evaluates the evidence presented by both parties under the substantial and competent evidence standard. *Id.* at § III.B.3(u).[1] After this hearing, the parents receive a full report on the proceeding, and, if the hearing officer sustains the student's suspension for longer than five days, the next step in the administrative process is an appeal by the student to the Chancellor. *Id*. at §§ III.B.3(u)(3), IV.

In sum, the New York public school suspension process, although not as rigorous as a full trial, does reduce the risk of erroneous deprivation significantly through a number of procedural protections. *See Goss*, 419 U.S. at 583 ("[R]equiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action."). Thus, while there may be some decreased risk of error if Plaintiffs'

---

[1] As noted above, while the "substantial and competent" evidence standard is not directly stated in the Disciplinary Procedures, the New York Appellate Division has interpreted the New York State Administrative Procedure Act to require such an evidentiary standard.

higher standard were imposed, this factor weighs only modestly in favor of Plaintiffs in light of the overall procedural protections afforded to students facing discipline.

Finally, the government's interest in limiting formalized procedures and administrative costs is particularly high in the context of primary and secondary public education. Requiring a preponderance of the evidence standard would burden the school discipline process with stricter procedures and a more onerous standard of proof. The Supreme Court has expressed concern with overburdening the school disciplinary system. *Id.* at 580 ("Some modicum of discipline and order is essential if the educational function is to be performed. Events calling for discipline are frequent occurrences and sometimes require immediate, effective action . . . The prospect of imposing elaborate hearing requirements in every suspension case is viewed with great concern."). The need to empower school officials to quickly, safely, and effectively resolve disputes is compelling. Imposing additional requirements on the school disciplinary processes would not only burden school officials, but risks negatively impacting other students and the educational environment of a school. This Court shares the Supreme Court's concern that "further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness." *Id.* at 583.

The Court recognizes that there are serious policy disputes underlying issues of school discipline. Some experts legitimately point to the serious negative effects of suspensions, while others argue that "zero tolerance" policies are necessary to maintain discipline in schools. But the Due Process Clause is a blunt instrument, not well suited to such difficult policy choices. Courts must be mindful of the Supreme Court's admonition that "[a]ssessment of the need for, and the appropriate means of maintaining, school discipline is committed generally to the

discretion of school authorities subject to state law." *Ingraham v. Wright*, 430 U.S. 651, 681-82 (1977).

On balance, the Court concludes that the state's interest in maintaining an efficient school disciplinary process outweighs the private interests of suspended students and the risk of erroneous deprivation. The Court concludes that the "substantial and competent evidence" standard as applied to Plaintiffs satisfies the requirements of the Due Process Clause under *Mathews* and *Goss*.

### 2. Persuasive Authority

In addition to the *Mathews* analysis, a number of courts have weighed in on the substantial evidence standard. Although neither the Supreme Court nor the Second Circuit has specifically affirmed the constitutional validity of the substantial evidence standard in school disciplinary proceedings, other district courts within the Second Circuit have concluded or assumed that the "substantial evidence" standard comports with procedural due process. *See, e.g., Binder v. Cold Spring Harbor Cent. Sch. Dist.*, No. 09-CV-4181, 2010 WL 3257708, at *7 (E.D.N.Y. Jul. 19, 2010) (referring to the "competent and substantial evidence standard" as the "proper" standard for school disciplinary hearings); *Patrick v. Success Academy Charter Schools, Inc.*, 354 F.Supp.3d 185, 224-25 (E.D.N.Y. 2018) (finding that the school may have failed to apply the substantial evidence standard in a school suspension case, and thus denying defendant's motion to dismiss plaintiff's procedural due process challenge); *Rubino v. Saddlemire*, No. 05-CV-1955, 2007 WL 685183, at *8 (D. Conn. Mar. 1, 2007) (noting that while "the Second Circuit has not specifically addressed the issue of the sufficiency of the evidence in school disciplinary proceedings, the Court assumes . . . that the [state university's]

9

disciplinary action must be supported by *substantial evidence* in order to comport with due process" for a student's two year suspension (emphasis added)).

The Eleventh, Ninth, and Fifth Circuits have similarly affirmed the constitutionality of the substantial evidence standard in school suspension cases. *See Nash v. Auburn University*, 812 F.2d 655, 668 (11th Cir. 1987) (requiring that the decision to suspend students on the basis of academic dishonesty be supported by "substantial evidence"); *Jackson v. Hayakawa*, 761 F.2d 525, 526-27 (9th Cir. 1985) (requiring in the case of college students who were reprimanded, put on probation, and expelled for attending a rally that any disciplinary action must be supported by "substantial evidence" in order to satisfy due process requirements); *Keough v. Tate Cnty. Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984) (concluding that there is no procedural due process violation in a suspension proceeding applying the substantial evidence standard). Plaintiffs cite no case in which a court has held that that due process requires a preponderance standard for student suspensions.

Moreover, federal courts, including the Supreme Court, have blessed the substantial evidence standard as the proper standard of proof in state administrative contexts outside of school disciplinary hearings. *See, e.g.*, *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (holding the "some evidence" standard to be constitutionally sufficient to support decision to revoke good time credits for prisoner); *Lefford v. McCall*, 916 F. Supp. 150, 155-56 (N.D.N.Y. 1996) (concluding that the "substantial evidence" standard is constitutionally sufficient to support decision to revoke disability pension); *Pascazi v. Rivera*, No. 13-CV-9029, 2015 WL 845839, at *10 (S.D.N.Y. Feb. 26, 2015) (holding that the "substantial evidence standard" is constitutionally sufficient to support decision finding plaintiff's company willfully violated New York labor law).

State case law also supports the constitutionality of the substantial evidence standard. In particular, the New York Appellate Division addressed the very question before this Court and held that the "substantial and competent standard of proof does not violate a student's constitutional right to due process." *Mills*, 293 A.D.2d at 40. Applying *Mathews,* the Appellate Division concluded that a preponderance of the evidence standard is reserved for "more substantial liberty and property interests than are implicated in a student suspension hearing." *Id.* at 39. The court also emphasized that while the substantial evidence standard is less than a preponderance, it is still sufficiently robust to prevent an erroneous deprivation of the student's liberty and property interests. *Id.*

These cases provide further persuasive support for this Court's conclusion that, at least as applied to Plaintiffs' suspensions, the procedural protections afforded by New York law comply with the Due Process Clause. Thus, Plaintiffs' due process challenge to the substantial evidence standard does not state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

### IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 17, enter judgment of dismissal, and close this case.

SO ORDERED.

Dated: February 2, 2026
      New York, New York

                                                 J. PAUL OETKEN
                                          United States District Judge